J-S57013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM PATRICK MIDDLETON | : | |
| | : | |
| Appellant | : | No. 643 MDA 2019 |

Appeal from the PCRA Order Entered April 9, 2019
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000214-1977

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 26, 2019**

William Patrick Middleton appeals from the April 9, 2019 order dismissing his third petition for collateral relief under the Post-Conviction Relief Act ("PCRA") as untimely.  We affirm.

The PCRA court has provided a thorough summary of the factual and procedural background of this case:

> On September 29, 1976, [Appellant] escaped from the U.S. Penitentiary in Lewisburg, Pennsylvania.  After his escape, his female companion, [Frances Hunt ("Hunt")], picked him up at some railroad tracks near the Penitentiary and drove him to a secluded field in Montoursville, Lycoming County, Pennsylvania. The next day, September 30, 1976, [Appellant] kidnapped and brutally beat and strangled Wanda Marie Geho, a young woman who had left her place of employment to pick up lunch for herself and a coworker at a shopping center in Montoursville.  [Appellant] took Geho's purse and her automobile, leaving Geho in the same field where he had been left by Hunt the previous day.  When Hunt returned to check on [Appellant] at around 3:30 p.m. that day, she found Geho laying in some beaten-down weeds.  Thinking that Geho was dead, Hunt drove to a nearby gas station to notify the

authorities. When Hunt returned with the police, it was found that Geho was still alive; however, she died of her injuries at 5:00 p.m. that afternoon after being transported to a hospital. After leaving the Montoursville area, [Appellant] drove Geho's vehicle to Philadelphia where he committed an armed robbery of a Howard Johnson's Motor Lodge.

[Appellant] was arrested in October 1976 and charged with aggravated assault, homicide, robbery, kidnapping, and theft in Lycoming County. The matter was transferred to Lebanon County upon [Appellant's] request for a change of venue. A jury trial was commenced in Lebanon County with jury selection occurring on May 23 and 24, 1977. The Commonwealth proceeded with its case on May 25, 1977. Hunt was the first witness called to testify by the Commonwealth on May 25, 1977. The [trial court] recessed at the completion of Hunt's direct examination.

When the [trial court] reconvened, an in[-]camera proceeding was conducted with only counsel, [Appellant], and court personnel present. At that time, the Commonwealth notified the [trial court] that a plea agreement had been reached and that [Appellant] would plead guilty to several offenses. In the presence of defense counsel and [Appellant], the Commonwealth attorney informed the [trial court] that the plea bargain included [Appellant] pleading guilty to second-degree murder, robbery, and kidnapping and that the Commonwealth would take no position as to whether the sentence would be concurrent or consecutive to any sentence [Appellant] was serving at that time. In addition, the Commonwealth would contact the Federal Bureau of Prisons, which had already been done, so that [Appellant's] existing federal sentence would be served in a Pennsylvania state correctional institution. In addition, the Commonwealth attorney represented:

> [T]he other charges in the Bills of Information, upon acceptance of the plea and sentence thereon, will be nol-prossed by myself upon motion, one of the bas[es] being that this is part of a plea agreement and the other basis technically that they would be included in defenses to which he would be pleading guilty.

N.T., 5/25/77, at 722; Exhibit "A" to PCRA Petition at p.4

- 2 -

The Commonwealth made arrangements with the federal authorities for [Appellant] to serve the remainder of his federal sentence in a state correctional institution. The Commonwealth also contacted the Philadelphia District Attorney to request that [Appellant] not be prosecuted for the robbery [Appellant] had committed in that jurisdiction after he had absconded with Geho's vehicle. After the Court conducted a guilty plea colloquy, [Appellant] pled guilty to second-degree murder, robbery and kidnapping.

On May 26, 1977, [Appellant] was sentenced to life imprisonment with no stated minimum for parole eligibility, with concurrent sentences of ten to twenty years each for the robbery and kidnapping convictions. A federal escape charge had previously been lodged against [Appellant] but had been dismissed without prejudice prior to [Appellant] entering his plea in this action. After [Appellant] was sentenced in this action, the federal government prosecuted him for his escape from federal prison and [Appellant] pled guilty to that charge. [Appellant] represents that a federal detainer on that charge is still in existence.

PCRA Court Opinion, 6/20/19, at 1-4 (excessive capitalization omitted).

Appellant did not file a direct appeal. Appellant filed his first PCRA petition on July 20, 1981, arguing that his guilty plea colloquy was fatally flawed because the trial court did not "advise him on the record that the jury's verdict had to be unanimous and of his right to withdraw his guilty plea." *Commonwealth v. Middleton*, 476 A.2d 932, 933 (Pa.Super. 1984). Appellant also argued that his trial counsel was ineffective for failing to successfully challenge these alleged oversights. The trial court denied Appellant's first PCRA petition, and this Court ultimately filed an opinion affirming that denial on the grounds that Appellant's claims lacked merit under the version of the Pennsylvania Rules of Criminal Procedure that were operative at the time of Appellant's guilty plea. *Id*. at 936-37.

Appellant filed his second PCRA petition on March 21, 1994. In relevant part, Appellant argued that: (1) the Commonwealth had violated his plea agreement by failing to *nolle pros* the escape charge lodged by federal authorities; (2) that the trial court had inadequately conducted Appellant's guilty plea colloquy under then-Pa.R.Crim.P. 319(b)(2);[1] and (3) that both trial and appellate counsel were ineffective under various theories related to his guilty plea. On November 7, 1994, the PCRA court denied Appellant's second PCRA petition after concluding that all of Appellant's claims were either previously litigated or waived. Appellant appealed to this Court. In an unpublished memorandum dated December 21, 1995, this Court affirmed the PCRA court's denial of Appellant's second PCRA petition after concluding that Appellant had not made a *prima facie* demonstration of his right to relief. **See Commonwealth v. Middleton**, 674 A.2d 317 (Pa.Super. 1995) (unpublished memorandum). Appellant filed a petition for allowance of appeal with our Supreme Court, which ultimately denied it. **See Commonwealth v. Middleton**, 675 A.2d 1245 (Pa. 1996).

On February 6, 2019, Appellant filed the instant PCRA petition, his third. In this petition, Appellant again raises claims related to his plea agreement, arguing that it was both unlawfully induced and breached by the Commonwealth. Appellant also asserts that all of his prior counsel were

---

[1] This Rule has since been renumbered at Pa.R.Crim.P. 590(B)(2) ("The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea of plea of *nolo contendere* is based.").

ineffective for allegedly failing to raise these issues, and asserts his innocence. On February 15, 2019, the PCRA court determined that Appellant's third petition was untimely as pleaded, and provided Appellant with notice of its intent to dismiss without a hearing. Appellant filed a response arguing that his petition satisfied the PCRA's timeliness requirements by allegedly producing newly discovered facts in the form of a December 13, 2018 affidavit from Appellant's trial counsel, Peter T. Campana, Esq. The PCRA court dismissed Appellant's petition without a hearing on April 3, 2019. Appellant filed a timely notice of appeal to this Court. Both Appellant and the PCRA court have timely complied with the requirements of Pa.R.A.P. 1925 by, respectively, filing a concise statement under Rule 1925(b) and an opinion under Rule 1925(a).

Our standard and scope of review in this context is well-articulated under existing Pennsylvania precedent: "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013). We must view the evidence of record in the light most favorable to the prevailing party at the PCRA court level. *See Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). However, we apply a *de novo* standard of review with specific regard to the PCRA court's legal conclusions. *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011).

Before we may address the underlying merits of Appellant's third PCRA petition, we must assess whether the petition is timely, or subject to one of the exceptions to the timeliness requirements under the PCRA. *See Commonwealth v. Walters*, 135 A.3d 589, 591-92 (Pa.Super. 2016) ("[T]he PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed.").

In pertinent part, the PCRA provides as following regarding timeliness:

**(b) Time for filing petition.**—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

. . . .

   (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

. . . .

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

42 Pa.C.S. § 9545(b). In reviewing these statutory provisions, it is also important to note that "there is no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions." *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008).

- 6 -

Instantly, Appellant's judgment of sentence was entered on May 26, 1977, and Appellant did not file a direct appeal. Therefore, Appellant's judgment of sentence became final for the purposes of PCRA timeliness on June 25, 1977, when Appellant's time in which to file a direct appeal to this Court expired. **See** Pa.R.A.P. 903(a) (appeals must be taken within 30 days from the entry of the appealable order); **see also** 42 Pa.C.S. § 9545(b)(3). Thus, Appellant's third PCRA petition is untimely by more than forty years.

Appellant claims that the exception at 42 Pa.C.S. § 9545(b)(1)(ii) respecting newly discovered material facts should apply in this case due to the affidavit submitted by Attorney Campana. In order to successfully invoke this exception to timeliness under the PCRA, Appellant must plead and prove that: "(1) the **facts** upon which the claim [is] predicated were **unknown** and (2) could not have been ascertained by the exercise of **due diligence**." **Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa.Super. 2018) (emphasis in original). Due diligence in this context "requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim or collateral relief," but does not call for "perfect vigilance [or] punctilious care." **Id.**

The at-issue affidavit primarily recites or describes portions of testimony from Appellant's trial and guilty plea colloquy that Appellant either directly participated in, or directly observed. **See** Campana Affidavit, 12/13/18, at ¶¶ 3-4. Attorney Campana also avers that "[i]t would have been reasonable for

- 7 -

[Appellant] to have believed that the criminal charge of 'escape' from federal custody would not be pursued by the U.S. Attorney in the Middle District of Pennsylvania . . . ." *Id.* at ¶ 5. Finally, Attorney Campana concludes by stating that he never realized that Appellant had ultimately pleaded guilty to the federal escape charge and consequently he "never raised the issue of the apparent violation of the plea agreement by the Commonwealth." *Id*. at ¶ 6.

As an initial matter, Attorney Campana's recital of testimony that Appellant was already privy to cannot qualify as "newly discovered" facts for the purposes of evading the PCRA's timeliness requirements. Since Appellant witnessed and participated in this testimony, he was fully aware of the content of that testimony and it cannot possibly be considered "unknown" under the auspices of § 9545(b)(1)(ii). The mere fact that Appellant has utilized Attorney Campana as a new conduit for this previously known information is of no moment. *See Commonwealth v. Edmiston*, 65 A.3d 339, 352 (Pa. 2013) (allegedly new facts for the purposes of PCRA timeliness "must not be facts that were previously known but are now presented through a newly discovered source").

Moreover, Attorney Campana's opinions regarding Appellant's desire to avoid additional federal charges via his plea agreement with the Commonwealth and Attorney Campana's acknowledgment of his failure to raise a claim regarding Appellant's plea agreement are **not** "new" facts for the purposes of this appeal. Rather, Appellant's complaint that his state plea

agreement did not encompass his federal escape charge was the primary basis for his two previous PCRA petitions. As such, that information has been well-known to Appellant for decades. Furthermore, the second of those PCRA proceedings also included claims regarding Attorney Campana's alleged ineffectiveness, which equally establishes Appellant's ongoing knowledge of Attorney Campana's failure to challenge any alleged violations of Appellant's plea agreement. These factual averments are simply not new,[2] and their temporal character is not altered simply by being presented via affidavit. *See Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015) ("[T]he focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.").

Overall, we conclude that Appellant has failed to satisfy the timeliness exception at 42 Pa.C.S. § 42 Pa.C.S. § 9545(b)(1)(ii). As such, we affirm the trial court's dismissal of Appellant's third PCRA petition as untimely.

Order affirmed.

---

[2] Even assuming, *arguendo*, that this information constituted "new" facts, Appellant has failed to establish due diligence. *See Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015) (holding that PCRA due diligence requirement must be strictly enforced). In relevant part, Appellant avers that he attempted to contact Attorney Campana in 1977 via telephone and by writing an unspecified number of letters concerning the federal escape charge. *See* Appellant's brief at 15. However, there is no competent evidence that Appellant took any meaningful efforts to obtain an affidavit from Attorney Campana in the intervening four decades. As such, Appellant did not act with due diligence. *See Commonwealth v. Smith*, 194 A.3d 126, 135 (Pa.Super. 2018) (holding that defendant did not satisfy due diligence requirement by offering no reasonable explanation for a 13-year delay in obtaining affidavit).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019